**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

LIPPERT COMPONENTS, INC.,

Plaintiff,

v.

DAYS LLC (d/b/a EQ United)

Defendant.

Civil Action No. ______________

**JURY TRIAL DEMANDED**

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Lippert Components, Inc. ("Lippert") brings this action for patent infringement against Defendant Days LLC d/b/a EQ United ("EQ"), and alleges as follows:

**NATURE OF ACTION**

1. This is a civil action for patent infringement arising under the laws of the United States, 35 U.S.C. § 1, *et seq*. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

**THE PARTIES**

2. Plaintiff Lippert Components, Inc. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 3501 County Road 6 East, Elkhart, Indiana 46514, United States.

3. Defendant Days LLC d/b/a EQ United is a domestic limited liability company organized and existing under the laws of the State of Indiana (Business ID: 194323-062), having a principal office address at 19300 Grange St., Cassopolis, Michigan 49031, United States. EQ's

registered agent is Nate Carpenter, located at 14211 Fox Chase Dr., Granger, Indiana 46530, which is within this judicial district.

4. On information and belief, EQ develops, manufactures, imports, offers for sale, and/or sells hydraulic automatic vehicle leveling system products, to consumers in the United States, including in the State of Indiana.

## JURISDICTION AND VENUE

5. Lippert realleges and incorporates by reference, as if fully set forth herein, all of its foregoing allegations and assertions.

6. This is an action for patent infringement, arising under the laws of the United States, Title 35 of the United States Code. This Court has exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has personal jurisdiction over EQ because EQ is a domestic limited liability company formed in Indiana, with its registered agent, Nate Carpenter, located at 14211 Fox Chase Dr., Granger, Indiana 46530, which is within this judicial district. EQ's principal office is located at 19300 Grange Street, Cassopolis, Michigan 49031. Further, on information and belief, EQ conducts and does regularly conduct business within the State of Indiana, including this district, by designing, manufacturing, distributing, promoting, marketing, selling, and offering for sale its Accused Products (as defined below) to customers in Indiana, including recreational vehicle manufacturers located in Elkhart County and the surrounding area. On information and belief, EQ has derived substantial revenue from such activities and has sought the protection and benefit of the laws of the State of Indiana by placing the Accused Products (as defined below) into the stream of commerce with the awareness and/or intent that they will be purchased by consumers in this district.

8. Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because EQ is a domestic limited liability company organized under the laws of the State of Indiana, as reflected in its active registration with the Indiana Secretary of State (Business ID: 194323-062), and is therefore "resident" in Indiana for purposes of patent venue. EQ's registered agent is located at 14211 Fox Chase Dr., Granger, Indiana 46530, which is within the South Bend Division of this district.

9. Additionally, or in the alternative, venue is proper because EQ has committed acts of infringement within this judicial district and has a regular and established place of business in this district. On information and belief, EQ was founded in Elkhart, Indiana in 1913 and has maintained continuous operations in this district for over a century. On information and belief, EQ currently operates multiple physical facilities in Elkhart, Indiana, including its EQ Logistics division (formerly Days Distribution & Logistics), which maintains at least three campuses in Elkhart: (a) a warehousing and logistics facility at 3304 Reedy Drive, Elkhart, Indiana 46514, encompassing approximately 500,000 square feet of climate-controlled warehousing space equipped with rail facilities, a fleet of company-owned trucks, and staffed with employees who report to the facility during regular business hours Monday through Friday; (b) a facility on County Road 3 North, Elkhart, Indiana; and (c) a facility on Phillips Street, Elkhart, Indiana. On information and belief, EQ also maintains, or has maintained, offices at 55169 County Road 3, Elkhart, Indiana 46514, and at 3112 Lexington Park Drive, Elkhart, Indiana 46514. On information and belief, these are not temporary or transient locations; they are permanent, physical, staffed facilities where EQ conducts regular and ongoing business operations, including warehousing, transportation, logistics, and distribution of products, including the accused instrumentalities, within this judicial district. On information and belief, EQ's Indiana facilities are used, among

other things, to store, ship, and distribute products—including products that embody the patented technology—to customers in this district and throughout the United States.

## FACTUAL BACKGROUND

10. Lippert realleges and incorporates by reference, as if fully set forth herein, all of its foregoing allegations and assertions.

### The Asserted Patents

11. Lippert is a leading innovator in a variety of industries, including commercial vehicles, equestrian and cargo trailers, marine products, residential and building fixtures, and recreational vehicles. For example, in the recreational vehicle ("RV") space, Lippert markets a wide range of innovative products ranging from stowable entrance steps, loft beds, faucets, and sofa/beds to jacks, pumps, leveling systems, and other camper accessories.

12. Lippert has invested heavily in developing innovative products, including its line of hydraulic leveling systems, which deliver state-of-the-art stability and fully automatic, precision leveling through engineered mounting solutions that eliminate the need for permanent frame modifications. As part of these efforts, Lippert has secured a portfolio of intellectual property rights, including multiple patents covering its advanced hydraulic leveling technologies and the patented inventions embodied in those systems.

13. In or around 2016, Lippert's predecessor-in-interest, Quadra Manufacturing, Inc. ("Quadra"), recognized a need in the field for a vehicle leveling system adapted to be mounted on a vehicle without permanently modifying the vehicle's frame. To fill this need, Quadra employees Johnnie Lehman, Gary Lehman, and Robert Slack conceived of and reduced to practice a vehicle leveling system, which is disclosed in U.S. Provisional Application No. 62/394,900 (the "'900 Application"), filed on September 15, 2016.

14. Quadra subsequently filed several applications claiming priority to the ’900 Application, including applications that matured into the Asserted Patents at issue in this proceeding.

15. To that end, Lippert is the current owner by assignment of the entire right, title, and interest in and to U.S. Patent No. 10,821,944 (the “’944 Patent”) entitled “Attachable leveling system” and U.S. Patent No. 11,945,418 (the “’418 Patent” and collectively the “Asserted Patents”) entitled “Method for attaching a leveling system.”

16. The Asserted Patents were originally assigned to Quadra and subsequently assigned to Leveltron, LLC (“Leveltron”), which in turn assigned all right, title, and interest, including the right to recover for past infringement, to Lippert. The Quadra-to-Leveltron assignment broadly transferred Quadra’s “entire right, title and interest throughout the world” in the inventions and associated patent rights, including all patents, applications, divisions, continuations, reissues, extensions, foreign rights, and priority rights, while simultaneously authorizing the assignee to obtain, pursue, and enforce those rights worldwide. The subsequent assignment from Leveltron to Lippert expressly conveyed “all income, royalties, damages, or payments due or payable as of the effective date or thereafter, including, without limitation, all claims for damages by reason of past, present or future infringement.” Accordingly, the assignment chain, properly construed in its entirety, confirms the parties’ intent to transfer the complete enforcement rights associated with the Asserted Patents, including the right to pursue claims for infringement predating the assignments.

17. The ’944 Patent was duly and legally issued to inventors Johnnie Lehman, Gary Lehman, and Robert Slack on November 3, 2020. A true and accurate copy of the ’944 Patent is attached hereto as **Exhibit A**.

18. The ’944 Patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

19. The ’418 Patent was duly and legally issued to inventors Johnnie Lehman, Gary Lehman, and Robert Slack on April 2, 2024. A true and accurate copy of the ’418 Patent is attached hereto as **Exhibit B**.

20. The Asserted Patents are directed to attachable leveling systems configured for jacking a vehicle frame. The Asserted Patents provide an adjustable, attachable vehicle leveling system that securely mounts jacks to a vehicle’s frame using existing features, thereby preserving the vehicle’s integrity, while offering flexible and reliable leveling support.




*See* Ex. A, Fig. 2; Ex. B, Fig. 2.




*See* Ex. A, Fig. 3; Ex. B, Fig. 3.

21. Lippert sells and has sold automatic hydraulic leveling systems (the “Lippert Products”)—under its Bigfoot Leveling Systems brand, for example—that embody the innovative designs protected by the Asserted Patents. Lippert has complied with 35 U.S.C. § 287 by properly marking the Lippert Products with the Asserted Patents.

22. As such, is an example shown below:



*Lippert's Bigfoot Mercedes Benz Sprinter Class-B Automatic Leveling System*

23. Lippert also maintains a public patent marking website, wherein each Asserted Patent is identified. (*See* https://corporate.lippert.com/resources/patents.)

**<u>The Accused Products</u>**

24. Upon information and belief, EQ designs, manufactures, imports, offers to sell, and sells automatic hydraulic leveling systems, including at least the EQ Smart-Level Hydraulic Leveling System (the "Accused Product").

25. Upon information and belief, the Accused Product is an automatic hydraulic leveling system. It includes structural and functional components, such as a hydraulic jack, a frame-engaging bracket, and a fastener for securing the bracket and jack to a vehicles frame.

26. Upon information and belief, the Accused Product is marketed and sold by EQ in the United States, including within this judicial district, through its website, authorized retailers, distributors, dealers, and online sales platforms.

27. A representative image of the Accused Product is shown below, along with identifying information:



EQ Smart-Level Hydraulic Leveling System Mercedes Sprinter Chassis 2018 & Older



EQ Smart-Level Hydraulic Leveling System Mercedes Sprinter Chassis 2019-2022



EQ Smart-Level Hydraulic Leveling System Mercedes Sprinter Chassis 2023 and Newer

(https://eqsystems.us/product-category/motorhomes/class-c-sprinter-chassis/.)

28. As detailed below, the Accused Product is designed to and does operate in a manner that falls within the scope of one or more claims of each Asserted Patent.

29. The term "Accused Product" as used in this Complaint includes any and all automatic leveling systems made, used, offered for sale, sold, or imported by EQ that embody the same or substantially similar structure and operation as the representative Accused Product identified above.

30. The Accused Product is a non-limiting example identified based on publicly available information. Lippert reserves the right to identify additional infringing products through discovery and further investigations, and specifically alleges that all products that perform substantially the same function in substantially the same way to achieve substantially the same result as the patented inventions of the Asserted Patents are Accused Products under the doctrine of equivalents.

**<u>EQ's Knowledge, and Willful Infringement, of the Asserted Patents</u>**

31. Lippert has not licensed or otherwise authorized EQ to make, use, offer for sale, sell, or import any products covered by the Asserted Patents owned by Lippert.

32. On November 20, 2025, Lippert sent a letter to EQ notifying EQ of Lippert's patent rights, including the Asserted Patents, and identifying certain EQ leveling products including the EQ Smart-Level Hydraulic Leveling System, as practicing at least one claim of each of the Asserted Patents.

33. As a result of Lippert's November 20, 2025 correspondence, EQ received actual notice of the Asserted Patents and Lippert's position that certain automatic leveling systems fell within the scope of at least one claim of each of the Asserted Patents.

34. On February 9, 2026 counsel for EQ responded to Lippert's November 20, 2025 letter. In that response, EQ's counsel admitted that EQ has received actual notice from Quadra—Lippert's predecessor-in-interest—on or about February 19, 2021 that certain of EQ's automatic leveling systems fell within the scope of at least claim 1 of '944 patent.

35. Despite Lippert's communications and efforts to address this dispute prior to litigation, EQ has continued to make, use, offer to sell, sold, and/or imported certain automatic leveling systems in the United States, including the Accused Product.

**COUNT I**

**INFRINGEMENT OF U.S. PATENT NO. 10,821,944**

36. Lippert realleges and incorporates by reference, as if fully set forth herein, all of its foregoing allegations and assertions.

37. In violation of 35 U.S.C. § 271(a), EQ has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, the '944 Patent by making, using, offering for sale, selling, and/or importing the Accused Product in the United States, including within this district, which Accused Products infringe at least claim 1 of the '944 Patent and without the authority of Lippert, at least as shown and described in **Exhibit C**, which is expressly incorporated herein in its entirety.

38. To the extent EQ manufactures, uses, sells, offers to sell, or imports other automatic leveling systems that are the same as, or not materially different from, the Accused Product in ways relevant to the infringement analysis, such products likewise infringe the ’944 Patent for the reasons shown in Exhibit C.

39. In violation of 35 U.S.C. § 271(b), EQ has indirectly infringed the ’944 Patent by actively inducing and continuing to induce one or more “Third Parties” (e.g., third-party manufacturers, distributors, importers, retailers, agents, and/or contractors) to directly infringe at least claim 1 of the ’944 Patent by, for example, distributing or making available to such Third Parties instructions or manuals for manufacturing, using, selling, offering to sell, and/or importing the Accused Products, and/or providing technical support for doing the same. (*See e.g.*, https://eqsystems.us/wp-content/uploads/2025/07/EQ020R14-EQ-SMART-LEVEL-Sprinter-Mer.pdf.)

40. On information and belief, EQ does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of at least claim 1 of the ’944 Patent.

41. On information and belief, one or more of the Third Parties has engaged in the underlying act of direct infringement of one or more claims of the Asserted Patents through their use or sale of the Accused Product.

42. Accordingly, EQ’s conduct is intended to cause infringement by these Third Parties.

43. With knowledge of the ’944 Patent, as described above, EQ has contributorily infringed, under 35 U.S.C. § 271(c), at least claim 1 of the ’944 Patent by, among other things, selling and offering to sell within the United States its EQ Smart-Level Hydraulic Leveling System kits—including, without limitation, the mounting brackets, bolt kits, and associated frame engaging hardware included therein—which constitute a material component of the patented

vehicle leveling system and are especially made or adapted for use in practicing at least claim 1 of the '944 Patent. On information and belief, EQ's leveling system kits, including those sold under the EQ Smart-Level product line for motorhomes, fifth wheels, travel trailers, and other vehicle platforms, include frame engaging brackets designed to mount hydraulic jacks to a vehicle frame using manufacturer-provided apertures without permanently modifying the vehicle frame.

44. On information and belief, EQ does so with knowledge that the component was specially made or adapted for use in a manner that would infringe at least claim 1 of the '944 Patent when EQ sold, offered to sell, or imported the component.

45. On information and belief, these components are not staple articles of commerce capable of substantial noninfringing uses.

46. On information and belief, EQ had actual knowledge of the '944 Patent no later than February 19, 2021, when Quadra—Lippert's predecessor-in-interest and then-owner of the Asserted Patents—communicated with EQ regarding infringement of the same patents. EQ's own counsel confirmed this prior knowledge in a February 9, 2026 letter. At minimum, EQ had actual notice of the '944 Patent and Lippert's rights no later than November 20, 2025, when Lippert sent its cease-and-desist letter accompanied by detailed claim charts mapping EQ's products to the asserted claims. Despite this knowledge, EQ continues to knowingly, willfully, and deliberately infringe the '944 Patent. Moreover, despite extensive pre-suit correspondence spanning from November 2025 through June 2026—during which EQ continued to manufacture and sell the Accused Products—EQ has never articulated any substantive non-infringement position with respect to the Accused Products. As such, Lippert is entitled to enhanced damages pursuant to 35 U.S.C. § 284. Further, this is an exceptional case supporting an award of reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

47. Lippert has and continues to suffer damages as a result of EQ's direct infringement in an amount to be proven at trial.

48. EQ's acts of infringement have deprived and will continue to deprive Lippert of sales, profits, and other related revenue that Lippert would have made or would enjoy in the future; has injured Lippert in other respects; and will continue to cause Lippert added injury and irreparable harm unless and until this Court enters an injunction prohibiting further infringement, and specifically enjoins EQ's infringement.

49. Lippert is entitled to recover all damages and other monetary relief available under the Patent Act and applicable law, including, but not limited to, lost profits, a reasonable royalty, provisional-rights damages under 35 U.S.C. § 154(d), treble damages, pre- and post-judgment interest, costs, attorneys' fees, and such other relief as the Court deems just and proper.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 11,945,418

50. Lippert realleges and incorporates by reference, as if fully set forth herein, all of its foregoing allegations and assertions.

51. In violation of 35 U.S.C. § 271(a), EQ has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, the '418 Patent by making, using, offering for sale, selling, and/or importing the Accused Product in the United States, including within this district, which Accused Products infringe at least claim 1 of the '418 Patent and without the authority of Lippert, at least as shown and described in **Exhibit D**, which is expressly incorporated herein in its entirety.

52. To the extent EQ manufactures, uses, sells, offers to sell, or imports other automatic leveling systems that are the same as, or not materially different from, the Accused Product in

ways relevant to the infringement analysis, such products likewise infringe the ’418 Patent for the reasons shown in Exhibit D.

53. In violation of 35 U.S.C. § 271(b), EQ has indirectly infringed the ’418 Patent by actively inducing and continuing to induce one or more “Third Parties” (e.g., third-party manufacturers, distributors, importers, retailers, agents, and/or contractors) to directly infringe at least claim 1 of the ’418 Patent by, for example, distributing or making available to such Third Parties instructions or manuals for manufacturing, using, selling, offering to sell, and/or importing the Accused Products, and/or providing technical support for doing the same. (*See e.g.*, https://eqsystems.us/wp-content/uploads/2025/07/EQ020R14-EQ-SMART-LEVEL-Sprinter-Mer.pdf.)

54. EQ also actively induces one or more Third Parties to directly infringe at least claim 1 of the ’418 Patent, by publishing videos showing an EQ representative engaging in a method of attaching a leveling system to a vehicle frame as identified in at least claim 1 of the ’418 Patent, as shown below, for example:




(*See* https://www.youtube.com/watch?v=ctQFjC7pSM4&t=36s.)

55. On information and belief, EQ does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of at least claim 1 of the ’418 Patent.

56. On information and belief, one or more of the Third Parties has engaged in the underlying act of direct infringement of one or more claims of the Asserted Patents through their use or sale of the Accused Product.

57. Accordingly, EQ’s conduct is intended to cause infringement by these Third Parties.

58. With knowledge of the ’418 Patent, With knowledge of the ’418 Patent, as described above, EQ has contributorily infringed, under 35 U.S.C. § 271(c), at least claim 1 of the ’418 Patent by, among other things, selling and offering to sell within the United States its EQ Smart-Level Hydraulic Leveling System kits—including, without limitation, the mounting

brackets, bolt kits, and associated frame engaging hardware included therein—which constitute a material component of the patented vehicle leveling system and are especially made or adapted for use in practicing at least claim 1 of the ’418 Patent. On information and belief, EQ’s leveling system kits, including those sold under the EQ Smart-Level product line for motorhomes, fifth wheels, travel trailers, and other vehicle platforms, include frame engaging brackets designed to mount hydraulic jacks to a vehicle frame using manufacturer-provided apertures without permanently modifying the vehicle frame.

59. On information and belief, EQ does so with knowledge that the component was specially made or adapted for use in a manner that would infringe at least claim 1 of the ’418 Patent when EQ sold, offered to sell, or imported the component.

60. On information and belief, these components are not staple articles of commerce capable of substantial noninfringing uses.

61. On information and belief, EQ had actual knowledge of the ’944 Patent and Lippert’s patent portfolio relating to leveling systems no later than February 19, 2021, when Quadra—Lippert’s predecessor-in-interest and then-owner of the Asserted Patents—communicated with EQ regarding infringement of the ’944 Patent. EQ’s own counsel confirmed this prior knowledge in a February 9, 2026 letter. At minimum, EQ had actual notice of the ’418 Patent and Lippert’s rights no later than November 20, 2025, when Lippert sent its cease-and-desist letter accompanied by detailed claim charts mapping EQ’s products to the asserted claims. Despite this knowledge, EQ continues to knowingly, willfully, and deliberately infringe the ’418 Patent. Moreover, despite extensive pre-suit correspondence spanning from November 2025 through June 2026—during which EQ continued to manufacture and sell the Accused Products—EQ has never articulated any substantive non-infringement position with respect to the Accused

Products. As such, Lippert is entitled to enhanced damages pursuant to 35 U.S.C. § 284. Further, this is an exceptional case supporting an award of reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

62. Lippert has and continues to suffer damages as a result of EQ's direct infringement in an amount to be proven at trial.

63. EQ's acts of infringement have deprived and will continue to deprive Lippert of sales, profits, and other related revenue that Lippert would have made or would enjoy in the future; has injured Lippert in other respects; and will continue to cause Lippert added injury and irreparable harm unless and until this Court enters an injunction prohibiting further infringement, and specifically enjoins EQ's infringement.

64. Lippert is entitled to recover all damages and other monetary relief available under the Patent Act and applicable law, including, but not limited to, lost profits, a reasonable royalty, provisional-rights damages under 35 U.S.C. § 154(d), treble damages, pre- and post-judgment interest, costs, attorneys' fees, and such other relief as the Court deems just and proper.

## REQUEST FOR RELIEF

**WHEREFORE**, Lippert respectfully requests that the Court enter judgment in its favor and against EQ, and provide Lippert the following relief:

A. Order, adjudge, and decree that U.S. Patent No. 10,821,944 is valid, enforceable, and infringed by EQ;

B. Order, adjudge, and decree that U.S. Patent No. 11,945,418 is valid, enforceable, and infringed by EQ;

C. Enter a preliminary and permanent injunction against EQ enjoining it, its directors, officers, agents, employees, successors, subsidiaries, assignees, and all persons acting

in privity or in concert or participation with EQ from making, using, selling, or offering for sale in the United States any and all products and/or services embodying the patented inventions claimed in the Asserted Patents;

D. Award Lippert its damages for patent infringement pursuant to 35 U.S.C. §§ 284 and 154(d), and pre and post judgment interest as allowed by law;

E. Order, adjudge, and decree that EQ's infringement of the Asserted Patents has been deliberate and willful, and award Lippert treble damages under 35 U.S.C. § 284;

F. Find that this case is "exceptional" under 35 U.S.C. § 285, and award Lippert its costs and reasonable attorney's fees as provided in 35 U.S.C. § 285;

G. That Lippert be granted prejudgment and post-judgment interest, and;

H. Award such other and further relief as the Court deems just and proper.

## **REQUEST FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Lippert hereby respectfully requests a jury trial on all the issues in this action so triable of right by a jury.

Dated: September 4, 2026

Respectfully submitted,

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Andrew M. McCoy*

Andrew M. McCoy (IN# 28297-49)
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
(317) 237-0300
andrew.mccoy@faegredrinker.com

Jared B. Briant (admitted to N.D. Ind.)
1144 15th Street, Suite 3400
Denver, CO 80202
(303) 607-3500
jared.briant@faegredrinker.com

Andrea I. Savageau (admitted to N.D. Ind.)
2200 Wells Fargo Center, 90 S. 7th Street
Minneapolis, MN 55402
(612) 766-7000
andrea.savageau@faegredrinker.com

*Attorneys for Lippert Components, Inc.*